## D. BARCLAY v. AGNES CAMERON AND ANOTHER.

The constitution of the Republic, and the statute of 1840 in pursuance of it, changed the rule of the common law which excluded aliens from the inheritance of lands, so as to create a defeasable estate by descent in the heirs of a citizen of the Republic dying intestate or otherwise.

Upon the death of the owner, the title instantly vested, subject to be defeated by the failure of the heir, or heirs, to become citizens, or to dispose of the estate by sale, within the period prescribed by the statute.

The estate is one upon condition that within nine years from the death of the ancestor, the heirs should become citizens, or should sell the land. The law annexed this condition to the estate.   It was a condition in law ; and more properly a limitation than a condition, and the estate, it would seem, a qualified or determinable fee—determinable upon the failure to perform the condition within the time limited for its performance.

The heirs upon whom the descent is cast, failing to comply with the conditions of the law before the expiration of the period prescribed, no other kin are entitled to the land, although they have within the prescribed period become citizens ; but it became liable to be " declared forfeited," or to " escheat to the government."

The estate which was vested in the heirs so continued until the expiration of the nine years.

Remote kindred were not within the spirit or intention of the provision, unless in cases where, for defect of near relatives, they would be embraced in the general term " heir."

*Certiorari* from judgment of the County Court ; on the trial the facts and law of the case being submitted to the court, it appeared that the plaintiff in the *certiorari* had no title to the property claimed by him, and the District Court affirmed the judgment of the County Court which decreed the property to the defendant : *held*, that the proper judgment was to have dismissed the case ; and on appeal to this court, by the plaintiff, it appearing that the judgment was proper on the merits, this court dismissed the cause.

APPEAL from Galveston.    Tried below before the Hon. James H. Bell.

This suit arose in the County Court in the final distribution of the estate of David Cameron, deceased.    Agnes Cameron and her sister, Jean Kennedy, representing themselves to be the sole heirs of David Cameron, applied at the August Term, 1855, for a final settlement and partition of the estate.    On the exhibit of the administrator it appeared that the deceased died seized of certain lots in Galveston, and his headright survey of land in Milam district, in this State, which were exhibited as assets on hand subject to distribution.    David Barclay intervened and opposed the claim of Agnes Cameron and her sister, and claimed that he was entitled to the estate, on the grounds that they are and always have been aliens to this State, the United States, and the Republic of Texas; and that he is the uncle of the deceased, and next of kin and entitled to inherit from him, and that as such he is the lawful heir of all the property of the deceased.

The facts agreed on by the parties are that David Cameron died on the 7th day of November, 1841, at which time he was a citizen of the Republic of Texas.    His only surviving relatives were his two sisters, Agnes Cameron and Jean Cameron, (since intermarried with John Kennedy,) and his uncle, the said David Barclay.    The sisters and the said John Kennedy were at the time of his decease, and have continued ever since to be, and now are subjects of the crown or kingdom of Great Britain, residing in Scotland, and aliens to the Republic of Texas, the State of Texas, and the United States.    His said uncle was at the time of his de-

cease, and ever since has been, and now is a naturalized citizen of the United States of America, residing in the State of Virginia, and up to the time of the annexation of the Republic of Texas to the said United States, was an alien to Texas. That all the property which said Cameron owned, at the time of his death, he acquired by purchase.

The County Court adjudged that the said Agnes Cameron and Jean Kennedy are the legal heirs of the deceased, and that David Barclay is not entitled to inherit the estate; and it decreed a distribution of the property accordingly.

The case having been removed by the petition of David Barclay for a writ of *certiorari* to the District Court, and there submitted to the court on the same agreed facts, the judgment of the County Court was affirmed, and the costs were decreed against the plaintiff, Barclay. The defendants to the petition for *certiorari* (which set out fully the proceedings and agreed facts in the County Court,) filed their answer alleging that there was no error in the judgment of the County Court, and prayed an affirmance thereof.

*O. C. & R. K. Hartley*, for the appellant.—Can an alien take land by descent in any other manner than that provided by our statute of descents?

Does the existence of nearer kin, who are aliens, prevent the estate from descending to remoter kin, who are citizens, in any other manner than that provided by our statute of descents?

Do the appellees, who are sisters of the decedent, and aliens, and who failed to avail themselves of our statute of descents, inherit to the exclusion of the appellant, the uncle of the decedent, who became a citizen within nine years (by annexation); or, if they cannot inherit, does their existence prevent the appellee from inheriting?

To state these questions, is to answer them. (Hardy v. DeLeon, 5 Tex. R., 242; 4 Wheat., 453; 3 Bl. Com., 249; Cryer v. Andrews, 11 Tex. R., 170.)

At common law, on failure of heirs capable of inheriting, the estate escheated. The next of kin, who was not an alien, inherited to the exclusion of all kin, of whatever degree, who were

aliens. The estate did not escheat, therefore, as long as there was any kin who was not an alien. (Same authorities, if any necessary.)

What is the effect of our statute of descents? Simply to declare that the above rules shall not determine the direction which the estate shall take, immediately upon the death of the ancestor, but that an interval of nine years shall be allowed for that purpose. We can find no such statute anywhere else, and we can, therefore, cite no authorities in point. It appears plain, however, on principle.

The argument on the other side is, that the statute casts the descent upon the alien first in the order of descents, although he fail to sell or become a citizen within the nine years ; and that after the nine years it escheats, although there be relations of the decedent who are citizens. This is the ground on which the case was decided below. It is more stringent in favor of forfeiture than the common law, which would not cast an inheritance upon an alien for the mere purpose of causing it to escheat. If the argument is good, it applies as well where the remoter kin are citizens at the time of the ancestor's death, as where they become citizens within the nine years.

The construction for which we contend has prevailed in practice hitherto. If there are any kin who are citizens, they take the estate, subject to the right of nearer kindred to come in and claim it within nine years. If there are no kindred who are citizens, but kindred become citizens within nine years, they also will take the estate, subject to the right of nearer kindred to come in and claim within nine years. Where the contest is between remoter kindred, who became citizens within the nine years, and nearer kindred who failed to do so, there can be no question of the right of the former. (See 4 Wheat., before cited.)

The statute says that " it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate, is or hath been an alien." Take an example : The grandfather dies, leaving real estate. His son and grandson are aliens. The grandson becomes a citizen within the nine years. The father fails

to sell or become a citizen within that time. Is there any doubt as to the right of the grandson to inherit the estate?

The statute of Virginia shows that the use of the word " is," in the above connection, is not meaningless. It says: " In making title by descent, it shall be no bar to a party that any ancestor (whether living or dead) through whom he derives his descent from the intestate, is or hath been an alien."

*A fortiori*, the existence of collaterals, who are aliens, can form no impediment.

The statute of Alabama says: " When the next of kin of the intestate are incapable of inheriting, from alienage, the estate descends to the nearest of kin of the intestate, who is a citizen of the United States." (Code, § 1580.)

The statute of North Carolina says: " When any person shall die, leaving relations, citizens of the United States, capable of inheriting his estate if there might be no other or nearer kindred, but who, by a rule of the common law, cannot inherit, because there are others of nearer kindred (as aliens or others) who can not hold land in the State, the estate of such deceased person shall descend to such of the first mentioned relations as would be entitled, if there were no other relations whatever." (Code, 249.)

It is a little surprising that the legislators of North Carolina thought that they were changing the rule of the common law, when they were merely declaring it. (Authorities before cited.)

The effect of our statute is to leave the common law rule in force, but to extend its operation over a period af nine years, instead of determining the direction of the estate by the circumstances existing at the moment of the decease.

The question here is not which of these parties shall have the estate, but whether it has escheated to the State. It is too plain for discussion that the appellees have lost all right to sell or become citizens and hold the land. The only remaining question is, shall the land escheat or shall it be inherited by the uncle, David Barclay?" (See Cryer v. Andrews, 11 Tex.)

The constitution of the republic was adopted on the eve of a struggle, the result of which was doubtful, by men who held their lives in their hands, and who were offering large bounties of land

to all who would come to their assistance. The kindred of not a few of them were all aliens. The act of 1840 was passed in a similar spirit. The plain and evident intention was that a man's relations should have his lands, if they claimed them within a reasonable time. The mode provided by the legislature, in which the claim should be made, was two-fold ; first, by sale within nine years ; second, by becoming a citizen within the same period. The object, no doubt, was to favor the next of kin, or first in the order of descent, by providing so simple and easy a mode as sale ; and in the event of the failure of the next of kin or first in the order of descent, to claim within the time either by sale or by by becoming a citizen, then to permit the estate to become inde-feasible in the nearest kindred who were citizens, or who might become citizens within nine years.

To permit such a reasonable intention of men acting under such meritorious circumstances to be defeated by the difficulty of determining the residence of the fee during the nine years, would be singularly out of place in the jurisprudence of this State.

There being no such statute any where else that we have been able to find, we will be excused for not citing any cases in point to the peculiar question involved in the case. We refer to the allowance of nine years. The general principles which control the case are elementary and do not require further citation than has been made.

We have discussed the case as if David Barclay had become a citizen by ordinary act of naturalization, whereas he became such by the operation of annexation. Blackstone in distinguishing be-tween the right of a denizen and a naturalized subject, says: " Yet, if he had been naturalized by act of Parliament, such eldest son might then have inherited ; for that cancels all defects, and is allowed to have a retrospective energy, which simple denization has not." A note to the text says, " Naturalization confers all the rights of a natural born subject, except that of filling certain offices, and of taking grants from the crown, &c. (12 and 13 William III, c. 2 ; 1 Geo. IV, stat. 2, c. 4, § 2.) The retros-pective effect attributed in the text to an act of naturalization has been considered to extend to entitling an alien wife to dower out

of lands held by her husband during the coverture, but sold before her naturalization. (Co. Litt., 31, b. n., 33 a.; 5 Br., P. C., 91; 2 Ves. Sen., 286.) Much however, depends on the words of the act," &c. In New York, the above point as to dower was decided the other way, as it ought to have been. (20 Wend., 338; Black. Com., vol. 2, p. 250.)

Whether naturalization should have a retrospective effect so as to affect the rights of other persons or not, it is very clear that it has such effect on a question between the State and the naturalized citizen, and most of all where the naturalization was by operation of annexation. The question in this case is between the State and David Barclay.

*F. H. Merriman,* for appellees.—By the terms of the constitution and the law passed under it, and the decision of this court, (Cryer v. Andrews, 11 Tex. Rep., 110,) the freehold of inheritance vested by descent cast upon the alien heirs of David Cameron, on the 7th November, 1841.

To know which of the alien heirs inherited by descent cast, see Hart. Dig., Art. 577.

The appellant never could take the inheritance as heir under the statute of descent and distribution, because the appellees were at the death of the decedent, and still are, *in esse.* So that the question is not "between the State and the appellant," for he has no claim to the estate. Neither is the question one of right between the State and appellees at the present time.

If, by force of the constitution of the republic of Texas, the laws passed under it, and the decision of the Supreme Court above cited, the freehold of inheritance by descent cast vested in the appellees, the act vesting requires a declaration of forfeiture, or of escheat to divest it. The nine years had not elapsed after the descent cast, before the constitution of the State of Texas went into force, and Art. 13, sec. 4 of that instrument provided, that the legislature should pass a law to ascertain forfeitures, &c., and by Art. 600, Hart. Dig., the right of alien heirs to inherit was re-enacted. No law has ever been passed by the State of Texas to enforce Art. 13, sec. 4, of the State constitution. And as no

mode has been provided by law, no forfeiture can be declared even by the State against the appellees. (Hancock v. McKinney, 7 Tex., 384; Swift v. Herrera, 9 T. R., 263.)

The estate of Cameron, which descended and vested in his sisters, is still held by them after the expiration of nine years, the same as an alien purchaser holds real estate at common law. Their title is good against every body but the State, and good as against the State until inquest of office found, or forfeiture declared to divest the title.

Neither the court or any other power can declare a forfeiture except in a mode and manner pointed out by law, and no law for that purpose has been passed. (Craig v. Leslie, 3 Wheat., 589, 594; Fairfax's Devisees v. Hunter, 7 Cranch, 603; Orr v. Hodgson et al., 4 Wheat., 453; Chirac v. Chirac, 2 Wheat., 259; ex. dem. Governeur's Heirs v. Robertson, 11 Wheat., 332; McCreery v. Allender, 4 Har. & McHen., 409; University v. Miller, 3 Dev., 191; Buchanan v. Deshon, 1 Har. & Gil., 280; Sheefe v. O'Neil, 1 Mass., 256; Jenkins v. Noel, 3 Stew., 60; Dudley v. Grayson, 6 Monroe, 260; Jackson v. Adams, 7 Wend., 367; Bradstreet v. Supervisors, &c., 13 Wend., 546; Scanlan v. Wright, 13 Pick., 523.)

The doctrine contended for most strenuously by the appellant, is that where all the heirs are aliens, as in the case at bar, the freehold of inheritance does not descend and vest in any one, but remains in abeyance for the period of nine years, subject to be sold by the alien heir, who is next of kin pointed out by the statute during that time, or to vest in him provided he becomes a citizen. If neither contingency happens, a distant relative not known to the statute as heir where nearer kin exist, may become a citizen, and the inheritance descends to and vests in him immediately.

It is believed that the constitution of the republic of Texas, and the act passed under it in relation to alien heirs, are sufficiently plain to show that the inheritance descends and vests in the alien heirs upon the death of the decedent. After the decision of this court in the case of Cryer v. Andrews, there is no longer any question about it. To pass by the statutory heirs, who are

the appellees, and vest the inheritance in the appellant, who is not a statutory heir, would be to sanction the abhorrent law of abeyance, leaving the fee of the inheritance *in nubibus*, from the 7th day of November, 1841, until annexation, or the term of nine years from the death of Cameron.

Ransack the whole body of the common law and but two cases of abeyance can be found. One, that of a grant to a corporation not *in esse*, where the franchise remains in abeyance until the corporation is organized, and then vests *eo instanti*. The other, the case of a parson of a church who hath only an estate therein for life: when he dies, the fee and freehold are both in abeyance until the successor is named, when it vests in him. The doctrine is that the fee is in abeyance because there is no person *in esse* in whom it can vest and abide.

· It is doubted by Mr. Fearne whether the inheritance can be in abeyance in any case. Indeed, he declares the law to be that the freehold never can be in abeyance, but must be vested in some one. (Fearne on Remainders, title Abeyance.)

WHEELER, C. J.—Upon the death of David Cameron in November, 1841, there was no one in being who, by the common law, was capable of inheriting his estate in lands in Texas. None of the parties to this suit would have been entitled, for they were all aliens, and, by the common law, incapable of taking the title to real property by descent. The land would instantly have escheated and vested in the State by operation of law, for the failure of competent heirs. (2 Bl., 249; 4 Kent. Com., 454; 2 Id., 54.) But the rule of the common law which excluded aliens from the inheritance was changed by the constitution and a statute of the Republic, so as to enable aliens to take by descent from a citizen a defeasible estate. The constitution declared that "no alien shall hold land in Texas, except by titles emanating directly from the government of this Republic. But if any citizen of this Republic should die intestate or otherwise, his children or heirs shall inherit his estate; and aliens shall have a reasonable time to take possession of and dispose of the same, in a manner hereafter to be pointed out by law." (Gen'l Provisions, sec. 10.) The statute of 1840, in pursuance

of this provision, enacts that "every alien to whom any land may be devised or may descend, shall have nine years to become a citizen of the Republic and take possession of such lands, or shall have nine years to sell the same before it shall be declared to be forfeited, or before it shall escheat to the government." (Hart. Dig., Art. 585.) The effect of these provisions was to enable aliens to acquire the title to real property by descent equally with citizens. And so it has been decided. (Cryer v. Andrews, 11 Tex. R., 170.) The consequence is, that upon the death of the intestate, the lands descended to the appellees, who were his sisters, and whom the law pointed out as his heirs, to the exclusion of the appellant, who was his uncle. (Hart. Dig., Art. 577.) The appellees as sole heirs of the intestate inherited his estate. The title vested in them instantly upon his death, by descent, subject to be defeated by their failure to become citizens, or to dispose of the estate by sale, within the period prescribed by the statute.

That the appellees were the heirs, and that a defeasible estate vested in them by inheritance immediately upon the death of the intestate, cannot admit of a question. The terms used in the constitutional and statutory provisions are "children or heirs," "inherit," "descend." These terms have a certain and fixed meaning, which cannot be mistaken. "Descent," or hereditary succession, is the title whereby a person on the death of his ancestor, acquires his estate as his *heir at law.* An *heir,* therefore, *is he upon whom the law casts the estate* immediately *on the death of the ancestor,* and an estate so descended on the heir, is in law called the inheritance. (3 Cruise, 318; 2 Bl. Com., 201.) The appellees were the heirs of the intestate; and unquestionably the estate of which he died seized vested in them immediately upon his death in November, 1841, by force of the provision of the constitution and statute. It was an estate upon condition that within nine years from the death of the ancestor, they should become citizens, or should sell the land. The law annexed this condition to the estate. It was a condition in law, and more properly a limitation than a condition, and the estate, it would seem, a qualified or determinable fee—determinable upon the failure to perform the condition within the time limited for its performance.

16Y

(2 Bl. Com., 154, 155, 156; 4 Kent Com., 129.)   Such appears to have been the view taken of the estate of the alien heirs in Cryer v. Andrews, (11 Tex. R., 182.)   But it is not perceived that the failure of the appellees to perform the condition annexed to the estate, could enure to the benefit of the appellant, or confer any right upon him.   The estate took its direction upon the death of the ancestor of the appellees, and vested in them as the heirs. He could not succeed to them, nor could he succeed to the ancestor, out of whom the estate had already passed by his death.   The descent was cast upon the heirs by the death of the ancestor.   The appellant was wholly without right; and it is difficult to comprehend how he could afterwards acquire the estate by operation of law.   He was neither a citizen nor an heir.   " An heir is he upon whom the law casts the estate immediately upon the death of the ancestor."   Not being then an heir, he could not become so by matter *ex post facto*.   He was an alien, excluded by the common law, though the appellees had not been in being, and not capacitated by the statute to take, because not an heir.   Not being an heir, his after acquired citizenship by force of annexation, did not bring him within the provision of the statute.   That was enacted for the benefit of the " children or heirs."   They only were within its provision.   The appellant therefore acquired no right to the estate by becoming a citizen before the expiration of the nine years; but it remained vested in the heirs during the prescribed period, unaffected by his intervening citizenship.   If at the expiration of that period they failed to perform the condition, and the estate became thereby forfeited or escheated, the forfeiture or escheat could not enure to his benefit.   It could not confer on him the right to come in to succeed them and intercept the reversion to the State.   They had the nine years to acquire an indefeasible estate. Upon their failure, at the expiration of the time limited, it might be "declared forfeited," or "escheat to the government."   The declaration of a forfeiture would require a judicial proceeding to be provided by law. (Hancock v. McKinney, 7 Tex. R.)   Its effect would be to divest the title out of the heirs, and vest it in the State.   But whether the estate be declared forfeited by the heirs for their failure to perform the condition, or escheat for the

want of heirs competent to take, it would enure to the benefit of the State, and not to a private person.   Whether it was an estate upon condition subsequent, which required entry; or a judicial proceeding on the part of the State to take advantage of the breach of the condition, or an estate determinable without judicial en- quiry, it would take the same direction.   Or, if the effect of the statute was to suspend the complete operation of the descent until the condition was performed, it was for the benefit of the heirs, and the effect of their default would be the same.

The estate could not remain in the intestate after his death, and the default of heirs and consequent escheat must relate to the period of the death of the intestate.  Whatever portion of the estate did not descend, necessarily vested instantly in  the  State  as the original ultimate proprietor.   In  no event could  the  default of  the heirs enure to the benefit of the appellant.   It is a general principle in American law, says Chancellor Kent, which  is  everywhere de- clared and asserted, that "when the title to land fails from defect of the heirs or devisees, it necessarily reverts or escheats to the people, as forming a part of the common stock to which the whole community is  entitled."

The rule of the common law is, that "whenever the owner dies intestate, without leaving any inheritable blood, or if the rela- tions whom he leaves are aliens, there is a failure of competent heirs, and the lands vest immediately in the State by operation of law."   (4 Kent. Com., 424.)    So if an alien purchase or if land be devised to him, though he may take and hold until inquest of office, yet if he should die before inquest had, "upon his death the land would instantly and of necessity, (as the freehold can not be kept in abeyance,) without any inquest of office, escheat and vest in the State."    (2 Id., 54.)   Upon no principle could the failure of the appellees  to  secure the inheritance operate to transfer the estate to the appellant.

When the constitution of the Republic was adopted, many of the persons engaged in the formation of the new government had but recently emigrated to the country, and many of them had children or near relations who were aliens, to whom they wished to secure their estates in Texas in case of death.   Hence, in

forming the constitution, they provided that if any citizen should die intestate "his children or heirs," though aliens, should inherit his estate. The provision of the statute giving nine years to become citizens or dispose of the land was enacted to effectuate this provision. It was a special favor or privilege which was extended to the children, or relations whom the law pointed out as the heirs of the deceased citizen. But if they failed to avail themselves of the privilege extended to them, it was not provided that their right should be transferred, by operation of law, to other remote kindred, or to persons not of the favored class or description for whom the benefit had been provided; but the estate was to become liable to be "declared forfeited" or to "escheat to the government." Remote kindred were not within the spirit or intention of the provision; and they were not provided for, unless in exceptional cases, where there was a defect of near relatives; they would then be embraced in the general term "heirs." By the common law, as we have seen, the appellant could in no event have been entitled. He was not of the description of persons entitled to the benefit and privilege conferred by the constitution and statute. All the rights an alien can have are derived from these, and they confer none upon the appellant.

It is an insuperable objection to the claim set up by the appellant, under the common law, that he was an alien at the time of the descent cast and under the statute that he is not an heir. None but an heir can inherit; and while the sisters of the deceased survived they are the heirs, not the appellant. "If a father be seized in fee, and the son commits treason and is attainted, and then the father dies, here the lands shall escheat to the lord, because the son, by the corruption of his blood, is incapable to be heir, and there can be no other heir during his life." (2 Bl. Com., 253.) So in the present case, the sisters being the heirs, none of the remoter kindred can be during their lives; and if they forfeit their estate, or suffer it to become determined, and to escheat, there is no known principle of either the common or statute law upon which the appellant can succeed to the inheritance. It is a controlling principle which must govern the disposition of this case that none but an heir can inherit. The appellant can have

no right to the inheritance, and, consequently, no standing in court; for it is only as heir that he claims the estate. His title having failed, it results that he is wholly without right to maintain this action. It does not become necessary to inquire further in this case respecting the rights of the appellees. The court held rightly that the appellant was without title; and as he was the plaintiff, the proper judgment which should have been rendered was, simply, that the case be dismissed, and such will be the judgment here rendered.

Reversed and dismissed.